## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bky. Case No. 21-30420 |
| | ) | Chapter 7 |
| Andy Baron Elliott, | ) | |
| Sandra Leah Elliott, | ) | **BRIEF IN SUPPORT OF** |
| | ) | **TRUSTEE'S OBJECTION TO** |
| Debtors. | ) | **DEBTORS' CLAIM OF EXEMPTIONS** |
| | ) | |

Gene W. Doeling, attorney representing the bankruptcy trustee in this case, submits this brief in support of trustee's objection to Debtors' claim of exemptions.

## **FACTS**

The Debtors originally filed for Chapter 13 bankruptcy on September 28, 2021. The Chapter 13 trustee filed five separate motions to dismiss the Chapter 13 plan based on the Debtors' failure to make payments. Eventually, after failing to make payments under the Chapter 13 plan, the Debtors converted to a Chapter 7 bankruptcy on January 9, 2024. The Debtors have ignored the provisions under 11 U.S.C. § 348(f)(1) that property of the estate in the converted case shall consist of property in the estate as of the date of the filing of the petition and instead, have changed values of assets on Schedule B and amended Schedule C of their bankruptcy schedules several times in a bad faith attempt to manipulate the bankruptcy estate's interest.

The Debtors have most recently filed amended Schedules A/B and C on July 19, 2024, previous amended schedules post-conversion to Chapter 7 were filed on June 7, and March 14, 2024, both of which were objected to by the Chapter 7 trustee. In the Debtors' most recent Schedule C filed on July 19, 2024, the Debtors have gone back to (mostly) listing the assets on the schedules that existed as of the date of the original Chapter 13 bankruptcy filing, which was filed on September 28, 2021; however, the Debtors have lowered the value of some of the assets and reduced the equity that existed at the time the Chapter 13 bankruptcy was filed.

In the Debtors' most recent bankruptcy filing, the Debtors still claim that their homestead is worth $370,000; however, because the Debtors deliberately failed to make mortgage payments during the Chapter 13 bankruptcy, the Debtors claim there is no longer any equity in the house other than $890.86 which the Debtors exempt under N.D.C.C. § 28-22-03.1(1). They ignore the fact that in their original schedules, the Debtors exempted $47,165 of equity in the Debtors' homestead using the ND homestead exemption and also ignore the increased market value of the real property, which is property of the Chapter 7 estate. The Debtors took out a second mortgage on the home after the case was converted to Chapter 7 of $73,445.96 with their Chapter 7 attorney's knowledge in order to make it appear that there was no equity.

With respect to the 2016 Chrysler 300, on the original schedules it was valued at $15,000, on the amended schedules filed on July 19, 2024, they valued it at $9,000.

The Debtors kept the same value for their household goods and furnishings at $3,000; however, the Debtors reduced the value of their electronics from the $2,000 originally scheduled, down to $1,000.

The Debtors have only recently scheduled two shotguns previously not listed and valued at $400 on their most recent amendment and now claim an exemption in those items under N.D.C.C. § 28-22-03.1(1). The Debtors' jewelry previously valued at $2,000, is now valued at $1,000 on the most recent filings. Debtors previously valued four pets at $1,000, and now reduced the value of the pets to $100.

The Debtors originally scheduled $8,500 in the First International Bank account at the time the Chapter 13 was filed, and now claims that balance was zero in the amended schedules. The Dakota West Bank account was originally $3,000, zero dollars is now claimed in the most recent filing.

Debtors had a 2006 VW Jetta valued at $3,000, which is not listed on their current schedules. The Debtors did maintain the previous value for the three horses at $1,500, and the trailer horse [sic] valued at $2,000.

Rather than make payments to their Chapter 13 plan, the Debtors transferred money to their children shortly before converting to a Chapter 7. On December 21, 2023, the Debtor transferred $1,100 to his daughter, and on December 26, the Debtor transferred $500 to his son. The Debtors also concealed the purchase of a 2004 GMC pickup and the transfer of that 2004 GMC pickup to their daughter during the Chapter 13.

The Debtors had gross deposits of funds into the First International Bank account in November 2023 of $19,115 (the objection wrongly states deposits of $16,459), gross deposits of $16,430 in December 2023, and gross deposits of $48,546 in January 2024 prior to the conversion to Chapter 7 on January 9, 2024, with total deposits of $107,857 in January 2024. The Debtors have omitted to report the deposits made between November 1, 2023 and January 8, 2024, totaling $84,091, to the Business Account.

During the time period when the Chapter 13 bankruptcy was pending with a confirmed plan, rather than making their Chapter 13 payments, the Debtors were making purchases at various sporting goods stores. These purchases include, but are not limited to:

    a. June 8, 2023, purchase at Big Boy's Toys in Watford City, ND for $1,384;
    b. July 12, 2023, Spartan Firearms in Minot, ND for $245;
    c. October 10, 2023, Rack Jack Stand for $174.24;
    d. October 19, 2023, Lundemo Firearms, Sydney, MT for $1,883.70;
    e. November 1, 2023, Scenic Sports, Williston, ND for $442.77;
    f. November 3, 2023, Lundemo Firearms for $425.13; and,
    g. December 13, 2023, purchase at Scenic Sports for $385.50.

The Debtors also made numerous purchases for RV accessories, despite testifying that they do not own an RV. These purchases include:

a. July 7, 2023, purchase at Rugby Homes and RV for $429.48;

b. July 10, 2023, purchase at Rough Rider RV for $1,322;

c. July 28, 2023, purchase at Rough Rider RV for $323.65;

d. July 31, 2023, purchase at Amunrud's RV in Sydney, MT for $326.85; and,

e. August 7, 2023, RV Upgrades purchase for $787.54.

Lastly, it was not until October of 2023 that Ms. Elliott became unemployed.

## LAW AND ARGUMENT

The Debtors have lowered their asset values so that they can attempt to claim additional assets as exempt. The exemptions under N.D.C.C. § 28-22-03.1(1) should be disallowed as the Debtors originally claimed the homestead exemption under N.D.C.C. § 47-18-01 and the exemption under § 28-22-03.1(1) cannot be used in conjunction with § 47-18-01.

A. **The Values of the Debtors' Assets and the Amount of Equity is Determined as of the Date of the Chapter 13 Filing.**

For purposes of 11 U.S.C.S. § 348(f)(2), bad faith can be established where the circumstances indicate that the debtor has been unfairly manipulating the bankruptcy system. See In re Lien, 527 B.R. at *8; See In re Malone, 2011 Bankr. LEXIS 1460 at *4. The value of assets is determined "as of the date such property becomes property of the estate". In re Wiczek-Spaulding, 223 B.R. 538, 541 (Bankr. D. Minn. 1998). Further, the property in a converted case remains as it existed on the date of the original petition, "with all its attributes including the amount of equity that existed on that date". Goetz v. Weber (In re Goetz), 651 B.R. 292, 2023 U.S. App. LEXIS 13486, n. 2 (8th Cir. 2023) (citing See, e.g., Kendall v. Lynch (In re Lynch), 363 B.R. 101, 106 (B.A.P. 9th Cir. 2007); In re Barrera, 620 B.R. 645, 653 (Bankr. D. Colo. 2020), aff'd 2020

- 4 -

WL 5869458 (B.A.P. 10th Cir. 2020) (finding that a proper interpretation of "property" under section 348(f)(1)(A) "is the property as it existed on the petition date, with all its attributes including the amount of equity that existed on that date." (emphasis in original)); Leo v. Burt (In re Burt), 2009 WL 2386102, at *5 (Bankr. N.D. Ala. July 31, 2009) ("Section 348(f)(1)(A) establishes the original chapter 13 petition date as the date on which a hypothetical inventory is to be conducted to determine what property will be in the estate of the converted case. This Court is of the opinion that the amount of equity remaining after deducting secured claims encumbering such property should also be determined based on the secured claim outstanding on the petition date." (footnote omitted)).

The value of the debtor's property and equity in said property should be determined as of the date of the original Chapter 13 filing, and if the Court finds the case was converted in bad faith, property acquired during the Chapter 13 filing is also property of the Chapter 7 estate.

B.  **The Conversion from Chapter 13 Bankruptcy to Chapter 7 was in Bad Faith.**

"Property of the estate in the converted case consists of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 USCS § 348 (f)(1)(A); See Alexander v. Jensen-Carter, 236 F.3d 431 (8th Cir. 2001) ("since there was no bad faith in the conversion, under 11 USCS 348(f)(1) the property of the estate was determined as of the date of the petition."); Fix v. First State Bank of Roscoe, 559 F.3d 803, 809 (8th Cir. 2009) ("bankruptcy proceeding was converted from Chapter 13 to Chapter 7, any property that was part of the bankruptcy estate at the time of the original filing remains the property of the bankruptcy estate after the conversion. See 11 U.S.C.S. § 348(f)(1)(A).").

While the property of the estate usually is determined at the date of filing, more assets can become part of the bankruptcy estate. 11 USCS § 348 (f)(2) provides that "[i]f the debtor converts

- 5 -

a case under chapter 13 of this title [11 USCS §§ 1301 et seq.] to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion".  See Goetz v. Weber (In re Goetz), 647 B.R. 412 (B.A.P. 8th Cir. 2024) ("§ 348(f)(2) punishes debtors who convert in bad faith by instead including that after-acquired property in the converted estate.") (citing Harris v. Viegelahn, 575 U.S. 510, 517-18, 135 S. Ct. 1829, 191 L. Ed. 2d 783 (2015)).  When a debtor converts in bad faith, the trustee can go beyond the date of filing and bring further assets into the bankruptcy estate up to the date of conversion.  See Id.

"Bad faith" is not defined in the Bankruptcy Code; thus, the court looks at the case law to interpret its meaning.  In re Lien, 527 B.R. *1, *6 (Bankr. D. Minn. 2015).  Bad faith can be established by considering the totality of the circumstances.  See Moser v. Mullican (In re Mullican), 417 B.R. at 402 (Bankr. E.D. Tex. 2008); In re Lien, 527 B.R. at 7.  Courts consider whether the debtor has been dishonest, deceptive, or unfairly manipulating the bankruptcy system.  See In re Malone, 2011 Bankr. LEXIS 1460 at *4 (Bankr. D. Neb. Apr. 21, 2011); In re Lien, 527 B.R. at *8.  Courts also consider the debtor's motivation to convert the case from Chapter 13 to Chapter 7 — whether the debtor was transparent about post-petition changes in circumstances that made them unable to make payments under their plan — otherwise the conversion will be a "windfall" for the debtors which they would not have been entitled to under the bankruptcy plan. See In re Mullican, 417 B.R. at 402 (debtors converted the case in bad faith because the debtors were able to make payments under the plan timely; the inheritance money would have fully paid unsecured creditors; the preferential payment of debts owed to family members over other unsecured creditors; debtors increased their expenditures and made false statement about the inheritance amount).  Some factors for consideration include "the timing of the conversion, the

Chapter 13 pay history, the debtor's participation in the Chapter 13 process, the amount of post-petition debt, the debtor's previous bankruptcy filings, and the value of assets in question". In re Lien, 527 B.R. at *8; In re Smith, 2012 Bankr. LEXIS 78, 2012 WL 43647 at *7 (Bankr. N.D. Ohio January 9, 2012).

Finding bad faith requires more than a lack of due diligence, the debtor must manipulate the case to the disadvantage of creditors. See In re Perez, 345 B.R. 137, 141-42 (Bank. D. Del. 2006) (although debtors were dilatory in responding to the motions, summons, and making payments to the Chapter 13 trustee, the court did not find bad faith to take advantage of creditors because the debtors were not able to make payments under the plan, they lost their rental property and vehicle.); See In re Lien, 527 B.R. at 10 (The failure by the debtor to disclose the assets as a whole is not an innocent mistake, even if it was an isolated event. The concealment of assets and the non-reporting of income is sufficient to find bad faith); See In re James, 345 B.R. 664, 668 (Bank. N.D. Iowa 2006) ("Spending significant cash assets on unnecessary luxury items with an intent to file bankruptcy and discharge existing indebtedness is bad faith.").

### C. **The Debtors have Shown Bad Faith by Spending Money on Unnecessary Items in Lieu of Making their Payments under their Chapter 13 plan.**

Here, the Debtors' Chapter 7 conversion was in bad faith. Specifically, they were not transparent about the funds in the Business Account, and did not report to the Chapter 13 Trustee the purchase of a 2004 GMC pickup or the Aero Trailer. Further, the Debtors transferred their 2004 GMC to their daughter upon her graduation in an attempt to conceal the asset from the bankruptcy estate and were spending funds on luxury items rather than making their Chapter 13 payment obligations. The failure to make payments to the Chapter 13 Trustee demonstrates that they were not transparent regarding post-petition changes in circumstances that would have prevented them from making Chapter 13 payments under the plan. The Debtors' deposits of

- 7 -

$84,091 in the 68 days prior to conversion are comparable to the inheritance money that the debtors received in the Mullican case. The Debtors should have been able to make payments to creditors under the plan if they had been prudent with their expenditures, similar to how the debtor in Mullican could have paid creditors if they had not raised their expenses.

Furthermore, similar to the debtor in the In re Lien case, the Debtors consistently omitted to disclose the funds that were received in the Business Account. Also, the Debtors did not receive approval from the Chapter 13 Trustee when they transferred the 2004 GMC pickup to their daughter, which is not an innocent mistake. See In re Lien, 527 B.R. at *10 (It is undisputed that "concealment of assets and non-reporting of income is sufficient to find bad faith"). In contrast to the debtor in the In re Perez case, the Debtors are manipulating the situation to the detriment of creditors. This is evident as the Debtors have not suffered any property loss, but have instead acquired a 2004 GMC pickup for $9,800 in 2021 and an Aero trailer for $6,200 in 2020. This suggests that the Debtors could have made payments under the plan if not for those purchases. The Debtors' behavior closely resembles that of the debtor in the In re James case. Despite being in financial distress, the Debtors spent a significant amount of money on gunpowder, purchased shells, and luxury sports items, transferred $1,100 to the Debtor's daughter in December 2023, and even gave $500 to the Debtor's son for Christmas. The Debtors' excessive spending on luxury items and expenses totaling $40,000 from 2021-2022 put them in the position where they were unable to keep up with their Chapter 13 payments. Although the Debtors claim that they "both made money and made payments on their mortgage, while in Chapter 13", they did not do so while complying with the Chapter 13 obligations.

While the Debtors claim that a reason for not keeping up with their Chapter 13 obligations was due to Ms. Elliott losing her employment, this did not happen until October of 2023, and many

- 8 -

Chapter 13 payments were missed before that date.  It is also important to note that the Debtor, Andy Elliott, has a history of not making his Chapter 13 payments. Mr. Elliott has filed for bankruptcy twice before in South Carolina on June 24, 2013 and February 10, 2015.  The 2013 Chapter 13 bankruptcy was dismissed for failure to make plan payments on January 23, 2015. Mr. Elliott again filed for Chapter 13 bankruptcy not even a month later, on February 10, 2015. However, the second bankruptcy plan did not comply with the requirements of Chapter 13 and was dismissed on June 9, 2015.  Therefore, since the Debtors have a history of not making Chapter 13 payments, they committed false oath by failing to disclose assets, (including tools, accounts receivable, and other assets), diverted funds which could have been used to fund Chapter 13 payments, and purchased and transferred other assets which were not disclosed to the trustee, the conversion from Chapter 13 to Chapter 7 was in bad faith as established by a totality of the circumstances.

      Here, the Debtors' manipulation of the schedules demonstrates bad faith.  The Debtors' manipulation of their asset values and exemption claims by allowing the interest and fees to accumulate against the Debtors' homestead, and then claim that there is no equity and they no longer need to use the homestead exemption is evidence of bad faith.  Although the Debtors still claim that their homestead is worth $370,000, since the Debtors deliberately failed to make mortgage payments during the Chapter 13 bankruptcy, the Debtors claim there is no longer any equity in the house other than $890.86 which the Debtors exempt under N.D.C.C. § 28-22-03.1(1). In their original schedules, the Debtors exempted $47,165 of equity in the Debtors' homestead using the ND homestead exemption and the market value of the real property has increased.  The Debtors took out a second mortgage after converting to Chapter 7 on the home of $73,445.96 to catch up on missed payments.  The Debtors are required to account for exemption purposes the

- 9 -

$47,165 of equity in the house as was stated on the original schedules, the cash that was on hand or in bank accounts at the time of the original bankruptcy filing, along with the original scheduled values of all other assets. See Goetz v. Weber (In re Goetz), 651 B.R. 292, 2023 U.S. App. LEXIS 13486, n.2 (8th Cir. 2023). As a result of using the North Dakota homestead exemption under N.D.C.C. § 47-18-01, the Debtors would be limited to the exemption amount available under N.D.C.C. § 28-22-03 at the time of the original bankruptcy filing. See N.D.C.C. § 28-22-03 ("In addition to the absolute exemptions mentioned in section 28-22-02, except in subsection 8 thereof, the head of a family, personally or by that person's agent, may select from that person's other personal property, any goods, chattels, merchandise, money, and other personal property not exceeding in value the sum of seven thousand five hundred dollars…"). By manipulating the debt against the house by deliberately failing to make payments and using up any equity in the homestead, the Debtors then use the exemption under N.D.C.C. § 28-22-03.1(1). ("In lieu of the homestead exemption, up to ten thousand dollars."). Therefore, the manipulation of the value and equity of the Debtors' home was done in bad faith while converting the Chapter 13 to Chapter 7.

The decrease in value of the Debtors' bankruptcy assets is not due to depreciation and normal market fluctuations as the Debtors' claim. Instead, the Debtors made an intentional decision to lower the value of their assets in order to exempt more assets under N.D.C.C. § 28-22-03.1(1). The Debtors have not given a full and accurate disclosure on their bankruptcy schedules. See In re Barrows, 399 B.R. 506, 510 (Bankr. D. Minn. 2009) ("The efficiency of the bankruptcy process depends upon the accuracy and reliability of the petition without the necessity of digging out and conducting independent examinations to get the facts." Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992) (citing In re Mascolo, 505 F.2d 274, 278 (1st Cir. 1974) ("The successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to

- 10 -

make a full disclosure.")). Consequently, "[f]ull and accurate disclosure on bankruptcy schedules is incumbent on any debtor." In re Soost, 290 B.R. 116, 126 (Bankr. D. Minn. 2003) (citing 11 U.S.C. § 521(1); Mertz, at 598; Cepelak v. Sears (In re Sears), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000)).

## CONCLUSION

THEREFORE, the bankruptcy trustee respectfully requests that the Debtors' exemption claims under N.D.C.C. § 28-22-03.1(1) be disallowed as the Debtors originally claimed the homestead exemption under N.D.C.C. § 47-18-01. The exemption under § 28-22-03.1(1) cannot be used in conjunction with § 47-18-01 and the assets and equity in the assets must be determined as of the date of the Chapter 13 filing. The Debtors' conversion was also done in bad faith signified by the Debtors filing numerous amendments changing the values of assets and prioritizing the purchase of unnecessary luxury recreational items over paying their obligations under the Chapter 13 plan, omitting to report to the Chapter 13 Trustee $84,091 in deposits in the Business Account from November 2023 to January 8, 2024, purchasing the 2004 GMC pickup and transferring of that 2004 GMC pickup to their daughter, and purchasing the Aero Trailer. The Debtors' asset and equity values are determined as of the date of filing the Chapter 13 bankruptcy. This conduct was all to the detriment of creditors, thus the conversion from the Chapter 13 case to Chapter 7 was made in bad faith.

Dated this 18th day of October, 2024.   */s/ Gene W. Doeling*
Gene W. Doeling (ND Atty. ID 05078)
Taylor Kuznia (ND Atty. ID 09829)
KALER DOELING, PLLP
Attorneys for Bankruptcy Trustee
3429 Interstate Blvd. South
P.O. Box 9231
Fargo, ND 58106-9231
(701) 232-8757

- 12 -

        gene@kaler-doeling.com
        taylor@kaler-doeling.com